UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINA CLARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:16-CV-1893 NAB |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Christina Clark's application for supplemental security income under the Social Security Act, 42 U.S.C. § 416 *et seq.* Clark alleged disability due to depression. (Tr. 146.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on March 8, 2018. Because the ALJ's decision was not supported by substantial evidence, the Court will reverse and remand this action for further proceedings.

**I.    Issue for Review**

Clark presents one issue for review. She asserts that the administrative law judge's ("ALJ") residual functional capacity ("RFC") determination was not supported by substantial evidence, because the ALJ did not properly weigh the medical opinions of consultative examiner Dr. Thomas Spencer and her treating doctor Dr. Melissa Jones. The Commissioner asserts that

the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**III. Discussion**

Clark contends that the ALJ's RFC determination and disability determination are not supported by substantial evidence, because the ALJ improperly discounted the opinion of the consultative examiner and her treating physician. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

In this case, the ALJ found that Clark had the severe impairments of "anxiety/depression/bipolar disorder, body dysmorphic disorder, and obesity." (Tr. 18.) He found that she had the RFC to perform the full range of sedentary work with the following non-exertional limitations: no exposure to work hazards; limited to simple unskilled work with no contact with the general public and only occasional contact with co-workers and supervisors. (Tr. 20.) In formulating the RFC, the ALJ reviewed several medical opinions regarding Clark's mental health impairments. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

can still do despite impairments and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2)[2]. All medical opinions, regardless of the source, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c).

Dr. Spencer, a state agency psychologist, and Dr. Jones, Clark's treating physician both prepared written medical opinions regarding Clark's mental health. (Tr. 267-70, 677-78.) The ALJ gave partial weight to Dr. Spencer's opinion and little weight to Dr. Jones' opinion. The Court will now address the ALJ's evaluation of each opinion.

### A. Dr. Spencer

Dr. Spencer, a licensed psychologist, was hired by the Social Security Administration to conduct a psychological examination of Clark. The evaluation took place on March 6, 2014. (Tr. 267-270.) Dr. Spencer reported that Clark's mental status examination indicated that she had fair eye contact, mildly pressured and loud speech, and she fidgeted. (Tr. 269). He noted that she cooperated and was a decent historian. (Tr. 269.) Her insight and judgment were fairly intact. (Tr. 269.) He described her as anxious. (Tr. 269.) During the examination, she denied suicidal and homicidal thoughts and was alert to person, time, place, and event. (Tr. 269.) He did not observe her responding to internal stimuli and no delusional beliefs were elicited. (Tr. 269.) He described her flow of thought as intact and relevant. (Tr. 269.) Dr. Spencer stated that based on her vocabulary, grammar, and general fund of knowledge, Clark appeared to be low

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed.

average to average intelligence. (Tr. 269.) Dr. Spencer diagnosed Clark with generalized anxiety disorder and depressive disorder not otherwise specified. (Tr. 269.) He opined that she retained the ability to understand and remember simple to moderately complex instructions and the ability to engage in and persist with simple moderately complex tasks. (Tr. 270.) He also opined that she demonstrated mild to moderate impairment in her ability to interact socially and in her ability to adapt to changes in the workplace. (Tr. 270.)

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether a claimant is disabled." *Id.* Unless the claimant's treating source is given controlling weight, the administrative law judge must explain the weight given to the opinions of a state agency psychological consultant. *Id.* "A single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011).

The ALJ gave partial weight to Dr. Spencer's opinion, because Dr. Spencer "uses terms that do not specifically define what the clamant is capable of doing on a vocational basis." (Tr. 25.) The Court finds that the ALJ's evaluation of Dr. Spencer's opinion was not supported by substantial evidence. The only portion of Dr. Spencer's opinion that is not included in the RFC is his opinion that she demonstrated mild to moderate impairment in her ability to adapt to change in the workplace. Dr. Spencer's language regarding Clark's ability to adapt to change in

the workplace is similar to the language he used regarding Clark understanding and remembering instructions, her ability to engage and persist in tasks, and her social interaction. The ALJ acknowledges that Dr. Spencer's opinion is generally consistent with Dr. Beezley's opinion, Clark's other treatment providers, and Clark's college grades. Dr. Jones found that Clark had limitations in the ability to respond to changes in the workplace, as well. (Tr. 678.) Therefore, the Court finds that the ALJ's reasoning for giving Dr. Spencer's opinion partial weight is not supported by substantial evidence in the record.

### B. Dr. Melissa Jones

Next, Clark received mental health treatment from Dr. Melissa Jones, between October 2014 and August 2015. During her treatment, Dr. Jones diagnosed Clark with bipolar disorder mixed, type 2; body dysmorphic disorder, and binge eating. On August 19, 2015, Dr. Jones completed a Medical Source Statement Mental regarding Clark. (Tr. 677-78.) Dr. Jones diagnosed Clark with Bipolar mood disorder, type two; body dysmorphic disorder, and borderline personality disorder. (Tr. 677.) She indicated that Clark experienced drowsiness and lack of focus as side effects of her medications. (Tr. 677.) She opined that Clark would experience days when she would need to leave work prematurely or be absent approximately 4 days per month. (Tr. 677.) She also opined that Clark would off task 25% or more of the time. (Tr. 677.) Dr. Jones opined that Clark was moderately limited[3] in the ability to understand and remember very short and simple instructions and maintaining socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 677-78.) Dr. Jones opined that

---

[3] Moderately limited was defined as "impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 677.)

Clark was markedly limited[4] in the ability to carry out very short and simple instructions; maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions; ask simple questions or seek assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; be aware and to take appropriate precautions; and travel in unfamiliar places or use public transportation. (Tr. 677-78.) Dr. Jones opined that Clark was extremely limited[5] in the ability to understand, remember, and carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 677-78.)

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons'

---

[4] Markedly limited was defined as "more than moderate, but less than extreme resulting in limitations that seriously interferes with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." (Tr. 677.)

[5] Extremely limited was defined as "impairment level precludes useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." (Tr. 677.)

7

for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

The ALJ gave little weight to Dr. Jones' opinion. (Tr. 25.) The ALJ stated that Dr. Jones' statements that Clark would miss four or more days of work per month, would be off task 25% of the work day due to her impairments, and has marked or extreme limitations in essentially every functional capacity were vague. (Tr. 25.) The ALJ also stated that Dr. Jones' opinion was inconsistent with the opinions of Dr. Spencer and Dr. Beezley, Clark's treatment record, and the record as a whole. (Tr. 25.)

The Court finds that the ALJ erred in giving little weight to Dr. Jones' opinion. A review of the records indicates that the doctors' opinions are not inconsistent, because the doctors' were making their observations at different times during different manifestations of Clark's mental illness. In March 2014, Clark met with Dr. Spencer she was enrolled in online classes for her school and had recently dropped a class. (Tr. 267-68.) She was also not receiving regular treatment for her psychiatric symptoms. (Tr. 267-70.) When Dr. Beezley completed her Medical Source Statement Mental on September 15, 2014, she had met with Clark twice. (Tr. 274-75, 322-23.) In July 2014, Clark reported that she had trouble sleeping and Dr. Beezley recommended power naps and a sleep schedule. (Tr. 324.) On September 12, 2014, Clark reported that her depression and fatigue were significantly impacting her social support and school performance. (Tr. 323.) Clark also reported obsession with her physical appearance. (Tr. 323.) A week after Dr. Beezley's medical source statement mental, Clark reported that she had some relief from her anxiety and depression, but her mind was racing and disrupting her studying. (Tr. 322.) Dr. Beezley had opined that Clark was markedly limited in her ability to maintain attention and concentration for extended periods. (Tr. 275.) Dr. Beezley also noted

that "Patient is able to concentrate and sustain attention when the environment is clear of distraction and with good mood/lack of depression." (Tr. 274.)

Dr. Jones completed her evaluation on August 19, 2015, ten months after she began treating Clark. (Tr. 677-78.) Just a month prior, Clark had reported to Dr. Jones that she had mixed cleaners and tried to drink it and had thought about stabbing herself with scissors and she was overwhelmed, stressed, and her therapy was not helping her. (Tr. 644.) She declined to go to a hospital stating it would not help. (Tr. 646.) In the previous year, Clark had been hospitalized twice for suicide attempts. (Tr. 324-34, 346-61.) The record contains several adjustments of Clark's medication in response to her symptoms.

The doctors' opinions were based on each doctors' experience with Clark at the time of her examination and prior visits. The record indicates a waxing and waning of symptoms, which should be considered. Bi-polar disorder is a condition commonly known to wax and wane. *Dillon v. Colvin*, 210 F.Supp.3d 198, 1209 (D.S.D. 2016). "It is not unexpected for an individual with [this condition] to appear and act healthy, while at other times to suffer from the extreme, debilitating problems [this condition causes]. *Id.* Just as a person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). The Eighth Circuit has repeatedly held that "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998). Clark's stable and less stable periods are consistent with chronic mental disability. *See* 20 C.F.R. Part 401, Subpt.

P, App. 1, 12.00(F) (in cases involving chronic mental disorder, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may greatly reduce the mental demands on the claimant. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized, but the ability to function outside of a structured or supportive setting may not have changed). Therefore, the ALJ's reasons for discounting Dr. Jones' opinion are not supported by the record as a whole.

## IV. Conclusion

Based on the foregoing, the undersigned finds that the Commissioner's final decision was not supported by substantial evidence in the record. Therefore, the Court will reverse and remand this action for further proceedings consistent with this memorandum and order.

The Court also observed some concerning comments made by the ALJ during the administrative hearing. The ALJ questioned Clark's fatigue as not being associated with a bipolar or depression diagnosis, because he had never heard of it. (Tr. 39.) He also suggested specific medication to treat her symptoms (Tr. 44.) and opined that people picked on her at school because of her weight. (Tr. 53.) The ALJ suggested that her memory and concentration problems exist because "some people are good and better at some subjects than others, and is that really that unusual?" (Tr. 61.) The most egregious comments involved the ALJ advising Clark that her method of suicide was not truly a suicidal act, because he did not believe that taking the entire bottle of Tylenol pills could damage her liver all at once. (Tr. 54.) The ALJ also told Clark, "But doesn't terminating the conversation and going about your way, rather than becoming suicidal, make more sense than becoming suicidal?" (Tr. 58.) Clark began crying and had to take a break during the ALJ's questioning. (Tr. 56.) These comments and "questions" were not necessary to the adjudication of this case. The ALJ's personal opinions about

medication, effectiveness of suicide attempts, and diagnosing Clark's behavior should be avoided upon remand of this action.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 18, 24.]

**IT IS FURTHER ORDERED** that the Commissioner's decision of September 17, 2015 is **REVERSED** and **REMANDED** to re-evaluate the weight given to the medical opinions of Dr. Spencer and Dr. Jones and provide a new RFC determination.

**IT IS FURTHER ORDERED** that a Judgment will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 20th day of March, 2018.

    /s/ Nannette A. Baker  
NANNETTE A. BAKER  
UNITED STATES MAGISTRATE JUDGE